IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARY PIERCE and HEIDI PIERCE,    )
                                 )
    Plaintiffs,                  )
                                 )
                                 )
vs.                              )   Case No. 03 C 7524
                                 )
CHICAGO RAIL LINK, LLC,          )
CSX TRANSPORTATION, INC., and    )
CSX INTERMODAL, INC.,            )
                                 )
    Defendants.                  )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gary and Heidi Pierce sued Chicago Rail Link, LLC (CRL), CSX Transportation, Inc. (CSXT), and CSX Intermodal, Inc. (CSXI) for injuries Gary Pierce (Pierce) suffered while working as a conductor at the Bedford Park, Illinois rail yard. Pierce brought two claims against CRL: a negligence claim under the Federal Employers Liability Act (FELA) and a Federal Railroad Safety Act (FRSA) claim that CRL violated 49 C.F.R. §§ 220.45 and 220.49, the Federal Railroad Administration (FRA) rules governing radio transmissions used in switching yards. The jury found for CRL on both claims.[1]

Pierce has filed post-trial motions seeking judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on his FRSA claim, and a new trial on all claims pursuant to Federal Rule of Civil Procedure 59. For the reasons that follow, the Court denies Pierce's

---

[1] The jury also found for CSXT and CSXI on common law negligence claims that the plaintiff asserted against them. The plaintiffs have not filed any post-trial motions with respect to these claims.

motion for judgment as a matter of law but grants in part his motion for a new trial and orders a new trial limited to the FRSA claim.

## Background

Pierce was injured on October 23, 2003 while working as a conductor at the Bedford Park rail yard. Pierce, who was employed by CRL, was assigned that day to work with engineer Donald Johnson. Johnson and Pierce were responsible for moving three locomotives provided by CSXT and CSXI from track number 8, located on the east side of the yard, to track number 13. Johnson was at the controls of Conrail locomotive 7310, the easternmost of the three locomotives, while Pierce was riding on the lead end (*i.e.*, the westernmost end) of the lead locomotive, CSXI locomotive 7724. As was customary, Pierce was giving directions to Johnson via a handheld radio. When the locomotives reached the number 10/11 switch, Pierce radioed to Johnson to stop east of the switch. Pierce then dismounted the lead locomotive to throw the number 10/11 switch to allow the locomotives to continue west on the lead track. Pierce walked toward the number 12/13 switch to throw it and then radioed to Johnson to "ease them back" or "shove easy" (railroad jargon for back up slowly). Johnson engaged the throttle after hearing Pierce's "shove easy" command and began to move the locomotives.

Johnson testified that shortly after Pierce said to "ease them back" or "shove easy," he radioed, "I'm on, shove fifty," signifying that he had re-boarded and that Johnson should move the locomotives west by fifty car lengths. The plaintiffs disputed that this second communication took place.

At some point, Pierce fell, was struck and/or dragged by one or more of the locomotives, and ended up on the ground approximately fifty feet west of the number 12/13 switch. The

2

plaintiffs' theory at trial was that Pierce had attempted to reboard the lead locomotive while it was moving – as CRL procedures permitted – but the locomotive was, unbeknownst to Pierce, moving too fast for him to board safely.

The parties presented testimony at trial regarding the FRA rules for proper radio communication in a switching yard. Several witnesses testified that Pierce's first command, "shove easy" or "ease them back," violated a FRA safety rule providing that

> [w]hen radio communication is used in connection with the shoving, backing or pushing of a train, locomotive, car, or on-track equipment, *the employee directing the movement shall specify the distance of the movement, and the movement shall stop in one-half the remaining distance unless additional instructions are received. If the instructions are not understood, the movement shall be stopped immediately and may not be resumed until the misunderstanding has been resolved*, radio contact has been restored, or communication has been achieved by hand signals or other procedures in accordance with the operating rules of the railroad.

49 C.F.R. § 220.49 (emphasis added). A related FRA rule states that

> [a]ny radio communication which is not fully understood or completed in accordance with the requirements of this part and the operating rules of the railroad, shall not be acted upon and shall be treated as though not sent.

49 C.F.R. § 220.45. These witnesses testified that Pierce's first radio command did not comply with the FRA rules because it did not specify a distance of the requested movement. If Pierce's command was non-compliant, then under the FRA rule Johnson should not have started to move the locomotives. Other witnesses testified that, if given, Pierce's second command ("I'm on, shove fifty"), was a proper command because it provided both a direction ("shove") and a distance (fifty car lengths). As noted earlier, the plaintiffs disputed at trial that Pierce made a second radio command, though Johnson testified that he heard one.

The verdict form included several questions relating to the radio rules. The jury answered

3

the questions as follows:

10. Did Chicago Rail Link violate 49 Code of Federal Regulations section 220.45, entitled "radio communication shall be complete"?

_____    __X__
Yes           No

(If you answer "yes," proceed to question 11. If you answer "no," skip question 11 and proceed to question 12.)

11. Did Chicago Rail Link's violation of 49 Code of Federal Regulations section 220.45 contribute, in whole or in part, to Gary Pierce's injuries?

_____    _____
Yes           No

(Proceed to question 12.)

12. Did Chicago Rail Link violate 49 Code of Federal Regulations section 220.49, entitled "radio communication used in shoving, backing or pushing movements"?

_____    __X__
Yes           No

(If you answer "yes," proceed to question 13. If you answer "no," skip question 13.)

13. Did Chicago Rail Link's violation of 49 Code of Federal Regulations section 220.49 contribute, in whole or in part, to Gary Pierce's injuries?

_____    _____
Yes           No

(Please proceed to question 14.)

4

14. Did Gary Pierce violate 49 Code of Federal Regulations section 220.49, entitled "radio communication used in shoving, backing or pushing movements"?

```
_____        __X__
  Yes           No
```

(If you answer "yes," proceed to question 15. If you answer "no," skip question 15.)

15. Did Gary Pierce's violation of 49 Code of Federal Regulations section 220.49 contribute, in whole or in part, to his injuries?

```
_____        _____
  Yes           No
```

Because the jury answered questions 10, 12, and 14 in the negative, it did not reach the issues of causation posed in questions 11, 13 and 15. In other words, the jury found that CRL (via Johnson) had not violated the FRA radio rules in moving the locomotives and that Pierce had not violated section 220.49 of those rules in communicating with Johnson.

Pierce contends that the jury's determination that CRL did not violate the radio rules was against the manifest weight of the evidence. He also argues that the Court erred in making two evidentiary rulings: allowing conductor Mark Bishop to testify to several opinions even though he was not identified in defendants' Rule 26(a)(2) disclosures, and permitting defendants' experts to offer their opinion that Pierce walked east after throwing the 12/13 switch instead of west as he claims. Pierce asks for judgment as a matter of law in his favor on the FRSA claim and a new trial on both his claims against CRL.

## Discussion

1. **Motion for judgment as a matter of law**

   Pierce moves for judgment as a matter of law on his claim pursuant to Rule 50(b)

5

because, he argues, no reasonable jury could find that CRL did not violate the radio rules applicable to shove movement of locomotives. 49 C.F.R. §§ 220.45 & 220.49. When "there is no legally sufficient basis for a reasonable jury to find for that party, the court may grant a motion for judgment as a matter of law against that party . . . ." FED. R. CIV. P. 50(A)(1). A motion for judgment as a matter of law, however, made after conclusion of the trial is nothing more than the renewal of a motion for judgment as a matter of law brought before the matter was submitted to the jury. FED. R. CIV. P. 50(B). If a motion for judgment as a matter of law is not made at the close of the evidence, a party may not bring such a motion after the jury's verdict under Rule 50(b). *See McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1555 (7th Cir. 1987) (moving for directed verdict at close of evidence is prerequisite to judgment under Fed. R. Civ. P. 50(b)). *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003) (same). *See also Downes v. Volkswagen of America*, 41 F.3d 1132, 1140 (7th Cir. 1994) (Seventh Circuit follows "plain language" of Rule 50 to determine whether party is precluded from seeking post-trial judgment as a matter of law).

In this case, Pierce did not move for judgment as a matter of law at any time prior to the filing of the instant post-trial motion. Pierce is therefore precluded from seeking judgment as a matter of law under Rule 50(b), and the Court has no authority to consider such a motion. *See Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209, 212 (7th Cir. 1995) (to preserve motion for judgment as a matter of law, defendant had to renew its motion at the close of all the evidence); *Redd v. City of Phoenix City*, 934 F.2d 1211, 1214 (11th Cir. 1991) (a "district judge may not [wave] his magic wand dismissing a procedural requirement [to seeking judgment as a matter of

law] as a technicality.")[2] The Court denies Pierce's motion for judgment as a matter of law.

## 2. Motion for new trial

Pierce has also moved for a new trial on his claims against CRL. Pierce bases his motion on three contentions: (1) the jury's determination that CRL did not violate the radio rules was against the manifest weight of the evidence; (2) the Court erred by allowing Mark Bishop to testify regarding what Pierce characterizes as "undisclosed expert testimony"; and (3) the Court erred by denying Pierce's motion *in limine* to bar CRL's expert witnesses from opining that Pierce walked east after operating the 12/13 switch. Because the second and third arguments appear to concern both of Pierce's claims against CRL, the Court will address these points first.

### A. Mark Bishop testimony

Pierce claims that the Court erred by allowing Mark Bishop, Johnson's regular conductor and one of the conductors who trained Pierce, to offer what Pierce characterizes as expert opinions despite the fact that Bishop was not disclosed as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(A) ("a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence."). Federal Rules of Evidence 702, 703, and 705 address testimony by qualified experts on issues of "scientific, technical or other specialized knowledge" and set forth how such experts and their opinions must be disclosed and presented. Pierce's contention that allowing Bishop's testimony was error fails because Bishop did not offer expert testimony under Rules 702, 703, or 705.

---

[2] Although CRL argued in its response brief that Pierce is precluded from filing a motion for judgment as a matter of law at this point, Pierce failed to address the issue in his reply brief.

7

Bishop's testimony mainly involved the following subjects: his job responsibilities as a conductor, his responsibilities under general operating rules of the rail yard, his role in training new conductors including Pierce, general questions about the responsibilities of conductors and engineers when making shove moves, and the process of getting aboard a moving locomotive.

It is true that Bishop offered several "opinions" during his testimony. These included testimony about the ease of stepping aboard a moving locomotive, a conductor's responsibility under a particular railroad rule, and how long it takes for a conductor to learn to judge the speed of a moving locomotive he is boarding. This testimony did not amount to expert opinion within the meaning of Rules 702, 703, or 705. Rather, they were opinions of a lay witness pursuant to Federal Rule of Evidence 701, which states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

All of Bishop's opinions were based on his experience, perceptions, and first-hand knowledge obtained by working as Johnson's regular conductor at the Bedford Park rail yard. *See Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) (allowing witness to testify regarding lay opinions based on knowledge and familiarity with facts at issue). None of the opinions offered by Bishop related to scientific, technical, or specialized knowledge within the scope of Rule 702 that required disclosure under Rule 26(a)(2)(A). Moreover, as Pierce's counsel acknowledged to the Court at sidebar, Pierce's counsel asked almost identical questions to his lay witnesses without having disclosed them pursuant to Rule

26(a)(2)(A). We note this not to suggest any sort of forfeiture on Pierce's part but rather to point out that the way Pierce's counsel treated the matter with his own witnesses tends to support the view that this sort of testimony did not have to be disclosed under Rule 26(a)(2)(A).

In sum, the Court's decision to allow Bishop's testimony was correct; Pierce is not entitled to a new trial against CRL on this basis.

## B. Expert testimony regarding Pierce walking east

Pierce claims that the Court erred by allowing defendants' experts, Foster Peterson and J.P. Purswell, to opine that after operating the 12/13 switch, Pierce walked east to meet and re-board the locomotive. Plaintiffs filed a motion *in limine* to bar the experts' testimony because, they asserted, there was insufficient evidence to support the proposition that Pierce walked east and thus the testimony was speculative. Defendants responded that neither plaintiffs' nor defendants' experts knew for sure what direction Pierce walked but rather had tried to reconstruct the accident based on the information available.

There was evidence sufficient to permit Peterson and Purswell to opine that Pierce walked east instead of west. Pierce testified that he suffers from retrograde amnesia due to the accident and remembers virtually nothing regarding the accident. Though Pierce testified that he typically walked west, there was testimony that he was trained to walk east under the circumstances in place at the time of the accident. Other witnesses testified that it was the usual practice of conductors at the Bedford Park yard to walk east after operating the 12/13 switch. Based on this evidence, Peterson and Purswell's testimony that Pierce walked east after operating the 12/13 switch was not speculative and was properly admitted.

## C. Violation of radio rules

Pierce seeks a new trial on his FRSA claim which, as explained earlier, was premised on his contention that CRL violated sections 220.45 and 220.49 of the FRA radio rules. The Seventh Circuit has recently stated that a court considering a motion for new trial may not set aside the jury's verdict "if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of the evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 520 (7th Cir. 2004). A new trial should be granted only in those cases in which it is readily apparent to the trial judge that the jury's determination was seriously out of kilter, *i.e.*, if the verdict "is not rationally connected to the evidence, if it is born out of passion and prejudice, or if it is monstrously excessive." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1067 (7th Cir. 1999). "As long as there is a reasonable basis in the record to support it, we will not overturn a jury's verdict." *Robinson v. Burlington Northern R.R. Co.*, 131 F. 3d 648, 656 (7th Cir. 1997). The Court concludes that there was no reasonable basis for the jury to find that CRL did not violate the radio rules when Johnson moved the locomotives based on Pierce's command to "shove easy."

The jury was instructed that to prevail on his FRSA claim, Pierce had to prove that CRL violated one or more provisions of the FRA radio rules and that the violation contributed to his injuries. *See* Jury Instructions at 25. As noted earlier, section 220.49 of the radio rules, as applied in this situation, requires a conductor (like Pierce) directing movement of a locomotive to specify the distance of the movement and directs an engineer (like Johnson) to stop the movement in one-half the remaining distance unless he receives additional instructions; section

10

220.45 prohibits the engineer from acting upon a transmission that he does not understand or that is incomplete under section 220.49.

Based on its responses to the special interrogatories, the jury found that neither Pierce nor Johnson violated section 220.49 (questions 10 and 14) and that Johnson did not violate section 220.45 (question 12). The only plausible reconciliation of these findings is that the jury determined that Johnson moved the locomotives based on a command from Pierce that Johnson understood and that complied with section 220.49.

There was no reasonable basis in the evidence to support these findings, even when the evidence is considered in the light most favorable to CRL. It was undisputed that Pierce's initial command to Johnson – "ease them back" or "shove easy" – did not specify a distance, as section 220.49 required. All of the lay witnesses and experts agreed. For example, conductor Mark Bishop testified that if a conductor does not give a distance, a "shove" command does not comply with the radio rules. CRL superintendent Leonard Mitchell testified that the radio rules require the conductor to specify a distance. Foster Peterson, one of CRL's experts, also testified that a "shove easy" command violated section 220.49 because it did not specify a distance. No witness testified that such a command met the requirements of the radio rules. Thus the command did not, under either section 220.45 or 220.49, permit Johnson to begin to move the locomotives.

CRL proposes several theories to explain and support the jury's determination that the "shove easy" command complied with the radio rules and permitted Johnson to move the locomotives. First, it contends that the jury could have found that Pierce's initial command was replaced by a second, proper command that included a distance – "I'm on, shove fifty." But even

11

if that is so, it is undisputed that Johnson began to move the locomotives in response to the original command, an action prohibited by the radio rules. To put it another way, there was no evidence that Johnson waited until the second command before starting to move the locomotives. Given these circumstances, a finding that Pierce gave a later, proper command properly might impact the jury's determination of whether Johnson's initial movement following a non-compliant command caused or contributed to Pierce's injuries, but it would not permit the jury to find that CRL (through Johnson) had not violated section 220.49 or section 220.45 by starting a movement in response to the initial, incomplete command from Pierce.

Second, CRL argues that even if Pierce's original "ease them back" or "shove easy" command did not explicitly include a distance, the radio rules permit an engineer to act on a non-compliant command if he understands what the conductor meant. *See* Def. Resp. at 7. This argument is incompatible with both the language of section 220.49 and the principles that govern interpretation of such rules. By its plain language, section 220.49 requires that a command directing movement "shall specify the distance of the movement." 49 C.F.R. § 220.49. CRL's proposed interpretation reads the term "specify" out of the rule, a result not permitted by well-established rules of statutory construction. *See Trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996) (construction "must account for a statute's full text"). In addition, railroad safety rules are construed broadly to effectuate their purpose of ensuring worker safety. *See Lilly v. Grand Trunk R. Co.*, 317 U.S. 481, 486 (1943). A construction that permitted distance of a movement to be implied *sub silentio* rather than specified would undermine this basic purpose. In addition, CRL's proposed interpretation overlooks the plain language of section 220.45, which requires an

engineer to disregard a radio command not just if he does not understand it, but if it is not complete – which Pierce's initial command was not.

Third, CRL argues that the jury could have found, consistent with the evidence, that Pierce's first command included an implied distance, in that Johnson knew from experience that Pierce would be reboarding the locomotive at the 12/13 switch. Again, this argument is contrary to the plain language of section 220.49 and to the requirements of section 220.45. As Pierce points out, the term "specify" means "to name or state explicitly or in detail." Pl. Mot. for New Trial at 7.

Because Pierce's command did not specify a distance, Johnson was prohibited under the FRA rules from moving the locomotives based on that command. As indicated above, that is what the rules unambiguously provide. In addition, Mark Bishop, a CRL conductor, testified that an engineer must receive a command that includes both a distance and a direction before moving a locomotive. Leonard Mitchell, a CRL superintendent, testified that an engineer violates the radio rules if he moves a locomotive in response to an incomplete command. And Foster Peterson, an expert for CRL, testified that Johnson "technically" violated the rules when he moved the locomotives on Pierce's command.

In sum, there is no plausible basis to sustain the jury's finding that Pierce's command did not fail to meet the requirements of the applicable radio rules, and thus no basis to sustain the jury's finding that CRL did not fail to comply with the radio rules by moving the locomotive in response to that command. The jury's answers to the corresponding interrogatories – 10, 12, and 14 – were critical to its verdict in CRL's favor on Pierce's FRSA claim; that claim encompassed only two elements, *see* Jury Instructions at 25, and it is clear from the interrogatories that the jury

13

did not reach the second element (causation). The verdict on that claim was therefore contrary to the manifest weight of the evidence, requiring a new trial.

The new trial will be limited to Pierce's FRSA claim against CRL. As noted earlier, Pierce did not challenge the jury's verdicts in favor of the other defendants, CSXT and CSXI. In addition, it is clear from Pierce's new trial motion that his argument about the radio rules was aimed only at the FRSA claim, not the FELA claim. After CRL pointed out in its response to the motion that Pierce was seeking a new trial only on the FRSA claim, Pierce made the following argument in his reply:

> In a footnote on page two of its Response, [CRL] contends that that [sic] a new trial should be limited to the question of whether the Radio Rules were violated, and should not cover any other issues concerning CRL's alleged negligence. However, a full re-trial on all issues is required, because Pierce has also moved for a new trial based on the rulings concerning Mr. Bishop's undisclosed opinion testimony, and Mr. Peterson's unsupported speculation that Pierce supposedly walked east.

Pl. Reply at 3. It is readily apparent from this passage that Pierce was contending that only his arguments about evidentiary rulings – the Court's rulings on Bishop and Peterson – impacted more than just his FRSA claim.[3] Because the Court has rejected those other arguments, the new trial will be limited to the FRSA claim.

In light of this ruling, the Court need not address Pierce's arguments regarding whether Johnson also violated the FRA radio rules by failing to stop the locomotive within one half of the "implied" distance given in Pierce's command.

---

[3] In any event, the jury reasonably could have found that even if CRL violated the radio rules, it was not negligent, as required for Pierce to prevail on his FELA claim. Pierce does not argue otherwise. The argument in his briefs is limited to the contention that the radio rules were violated; he makes no attempt to describe how this would or should affect the jury's finding on the FELA claim that CRL was not negligent.

14

## Conclusion

For the reasons stated above, the Court denies plaintiff's motion for judgment as a matter of law [docket no. 184] and grants in part and denies in part plaintiff's motion for new trial [docket no. 186]. The Court orders a new trial on Pierce's FRSA claim against CRL. This matter is set for a status hearing on November 30, 2006 at 9:30 a.m. for the purpose of setting a date for the retrial of that claim.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 20, 2006